UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                       Crim. File No. 06-82 (PAM/RLE)

                Plaintiff,

v.                                                                              **MEMORANDUM AND ORDER**

Juan Valencia-Meraz, a/k/a
Noe Rivera Torres, a/k/a
Valentin Castellanos-Meraz,

                Defendant.

_____

This matter is before the Court on Defendant's Objections to the Report and Recommendation ("R&R") by Chief United States Magistrate Judge Raymond L. Erickson dated May 10, 2006. The R&R recommends that the Court grant in part and deny in part Defendant's Motion to Suppress, deny Defendant's Motion to Dismiss, and grant Defendant's Motion to Strike. Defendant objects to the R&R on several grounds. The Court has conducted a de novo review of the Objections and the record. See 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). For the reasons that follow, the Court adopts the R&R.

**BACKGROUND**

Defendant is charged with one count of illegal re-entry after deportation, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), 6 U.S.C. §§ 202(3)-(4), and 6 U.S.C. § 557. The alleged offense arises from incidents that occurred in December 2005 and January 2006.

In November 2005, the St. Cloud Police Department and the Central Minnesota Drug Task Force began to investigate Ernesto Hernandez-Cortes for possible involvement in

narcotics distribution.  As part of the investigation, Task Force officers arranged for a confidential informant to conduct controlled purchases of methamphetamine from Cortes.  On December 8, 2005, the informant made arrangements with Cortes to purchase methamphetamine.[1]  During a telephone conversation, Cortes agreed to provide the informant with methamphetamine, but advised the informant that he needed to meet with another person and travel to the Minneapolis-St. Paul area to obtain the drugs.  Cortes and the informant agreed to complete the transaction later in St. Cloud.

Shortly after the telephone conversation, officers observed Cortes and another male leave his residence.  The two men drove to trailer park near Avon, where they picked up a third individual, who was later identified as Defendant.  Officers observed the three men drive towards the Minneapolis-St. Paul area, but they ended surveillance near Monticello because they lacked sufficient personnel to continue observation.

Nearly five hours later, officers recommenced their surveillance based on information from the informant.  According to the informant, Cortes stated that he had between four and five ounces of methamphetamine.  After following Cortes, officers conducted a traffic stop of his vehicle.  Following the traffic stop, officers searched the vehicle but found no controlled substances.  Nevertheless, Cortes was arrested.  Defendant, who identified himself as Valentin Castellanos-Meraz, and the other individual were detained for questioning.  All three men were placed in handcuffs and transported by the officers to the Stearns County Jail

---

[1] The informant also made two purchases from Cortes in November 2005, with officers surveying both transactions.

to be booked and identified. Defendant produced an international driving document, which identified Defendant as Valentin Castellanos-Meraz, and was fingerprinted. While searching Defendant, booking officers found cocaine in Defendant's jacket. Consequently, Defendant was arrested. However, all three men were released without court appearances.

On or around December 30, 2005, officers received an anonymous tip that there was an unusual amount of vehicle traffic to and from a trailer home in Avon and that the tipster believed the residents of the trailer home were involved in drug trafficking. Subsequently, officers who were surveying the trailer home in response to the tip observed Defendant drive from the trailer home. A Task Force officer approached Defendant and inquired whether Defendant had obtained a Minnesota driver's license.[2] After Defendant advised the officer that he had not, the officer arrested Defendant. Defendant produced a Minnesota state identification card, which contained a photograph in the likeness of Defendant but which identified him as Noe Rivera Torres. Defendant advised the officer that the identification card was genuine, and that the identification documents provided during the December 8, 2005, arrest were not. Defendant was transported to the Stearns County Jail, where he was booked and fingerprinted. Officers released Defendant from custody later that day.

On January 3, 2006, the Task Force officer again observed Defendant driving a vehicle. After the officer arrested Defendant again, Defendant was taken to the Stearns County Jail and

---

[2] The R&R states that the Task Force officer inquired whether Defendant had gotten a Minnesota driver's license "or whether he had a valid license from anywhere else." (R&R at 7.) Defendant objects to the quoted language and argues that the testimony of the Task Force officers was not credible. Based on a review of the record, the Court overrules this objection.

again was booked and fingerprinted. The next day, the Task Force officer informed a special agent with the United States Department of Homeland Security, Immigration, and Customs Enforcement ("ICE") that Defendant had used different names in his interactions with the Task Force and inquired whether ICE had any prior interaction with Defendant. After conducting a computerized query, the ICE agent learned that Defendant previously had been deported.

The ICE agent transmitted a detainer via facsimile to the Task Force agent. On January 5, 2006, the ICE agent interviewed Defendant at the Stearns County Jail. Prior to the interview, the ICE agent provided Defendant with a copy of Immigration and Naturalization Service Form 214, which is an approved Spanish translation of a Miranda advisory. Defendant read the advisory aloud and signed the waiver, which reflected that he understood his Miranda rights.

## DISCUSSION

### A.    Motion to Dismiss

Defendant seeks to dismiss the Indictment to the extent that it charges him with a violation of 8 U.S.C. § 1326(b)(2). He contends that the Government must prove to a jury that he has been previously convicted of an aggravated felony.[3]

Generally, a deported alien who violates § 1326(a) is subject to a fine and imprisonment

---

[3] Defendant also seeks to collaterally challenge his prior conviction, maintaining that he was denied his constitutional rights to due process and assistance of counsel. According to Defendant, because his prior conviction was obtained in violation of his constitutional rights, it cannot serve as the basis for a violation of 8 U.S.C. § 1326. As Chief Magistrate Judge Erickson correctly noted, this challenge is premature because it seeks to dispose of a sentence enhancement prior to a conviction. The Court therefore denies this aspect of the Motion to Dismiss without prejudice.

of not more than two years. 8 U.S.C. § 1326(a). However, an alien removed after an aggravated felony conviction faces a fine and a maximum of twenty years in prison. Id. § 1326(b). In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the United States Supreme Court held that courts need not submit to a jury the issue of whether a defendant was previously removed from the United States after being convicted of an aggravated felony. Rather, a court may raise the maximum sentence for illegal re-entry from two years to twenty years under 8 U.S.C. § 1326(b)(2) based on a judicial finding.

Generally, criminal defendants are entitled to have a jury find beyond a reasonable doubt the existence of any particular fact that the law makes essential to their punishment. United States v. Booker, 543 U.S. 220, 244 (2005). However, the Supreme Court has consistently re-affirmed an exception for prior convictions. Id.; Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); United States v. Gamboa, 439 F.3d 796, 815 (8th Cir. 2006) ("Almendarez-Torres . . . is still the law.").

The R&R correctly found that 18 U.S.C. § 1326(b)(2) is a sentencing enhancement and that Defendant's prior conviction is not an element of the offense. Thus, the Government need not prove to the jury that Defendant was previously convicted of an aggravated felony. The Court denies Defendant's Motion to Dismiss.

**B.**     **Motion to Suppress**

The R&R found that Defendant was arrested on December 8, 2005, without probable cause. Defendant seeks to suppress fingerprint evidence obtained as a result of his December 8, 2005, arrest. In addition, he contends that his December 30, 2005, and January 3, 2006, arrests were unlawful, and therefore seeks suppression of fingerprint evidence and custodial statements obtained as a result of those arrests.

Under the fruits of the poisonous tree doctrine, the exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of a constitutional violation. United States v. Simpson, 439 F.3d 490, 493 (8th Cir. 2006). Indirect fruits of an illegal seizure will be suppressed when they bear a "sufficiently close relationship to the underlying illegality." Id. at 495 (quoting New York v. Harris, 495 U.S. 14, 19 (1990)). However, the evidence may be admissible if "the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." Id. (quoting United States v. Crews, 445 U.S. 463, 470 (1980)). When determining if sufficient attenuation exists, the Court considers three factors: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." Id. (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975)).

1. Fingerprints Obtained After the December 8, 2005, Arrest

The R&R recommends that the Court deny Defendant's Motion to Suppress as it relates to the fingerprints obtained after the unlawful seizure of Defendant on December 8, 2005. Defendant objects, arguing that the fingerprint evidence is fruit of the unlawful seizure.

6

In both Davis v. Mississippi, 394 U.S. 721, 724-28 (1969), and Hayes v. Florida, 470 U.S. 811, 816 (1985), the United States Supreme Court held that the exclusionary rule applies to fingerprint evidence obtained as the result of unlawful seizures.[4] In both cases, the Supreme Court noted that detentions "for the sole purpose of obtaining fingerprints are . . . subject to the constraints of the Fourth Amendment." 394 U.S. at 727. In United States v. Guevara-Martinez, 262 F.3d 75 (8th Cir. 2001), the Eighth Circuit Court of Appeals explained that Davis and Hayes "should not be read as declaring that fingerprints taken after an illegal arrest are always inadmissible." Id. at 755 (citing Wayne R. LaFave, Search and Seizure, § 11.4(g), at 323 (3d ed. 1996)). Nonetheless, the Court of Appeals refused to limit the exclusionary rule only to situations where police unlawfully detain individuals for the purpose of obtaining fingerprints. Id. Rather, the Court of Appeals instructed:

> We apply the exclusionary rule whenever evidence has been obtained "by exploitation" of the primary illegality instead of "by means sufficiently distinguishable to be purged of the primary taint." Evidence can be obtained "by exploitation" of an unlawful detention even when the detention is not for the sole purpose of gathering that evidence.

Id. (quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963)). Notably, the Eighth Circuit found it "significant" that the government in Guevara-Martinez obtained the fingerprints for the purpose of an INS investigation — and not as a matter of course through routine booking procedures. Id. at 756.

---

[4]In Davis, police officers unlawfully arrested and confined a man to obtain his fingerprints and compare them to prints found at a crime scene. 394 U.S. at 722-23. In Hayes, police officers detained a man at the police station to obtain his fingerprints for investigative purposes. 470 U.S. at 813.

In this case, the first two factors under <u>Simpson</u> weigh in favor of suppression. Indeed, the R&R specifically found, and the Government concedes, that "given the temporal proximity, and the absence of intervening factors, the fingerprints that were taken, following the arrest of December 8, 2005, were not so attenuated as to purge them of the taint of the arrest." (R&R at 27; Pl.'s Resp. Deft.'s Objections at 6.)

However, the third factor — the purpose and flagrancy of the official misconduct — weighs against suppression. This factor "is considered the most important factor because it is directly tied to the purpose of the exclusionary rule — deterring police misconduct." <u>Simpson</u>, 439 F.3d at 496 (citing <u>United States v. Reed</u>, 349 F.3d 457, 464-65 (7th Cir. 2003)). There is no evidence that the officers obtained Defendant's fingerprints through a purposeful and flagrant violation of Defendant's Fourth Amendment rights. Moreover, unlike in <u>Guevara-Martinez</u>, there is no evidence that the officers were motived by the conduct of an investigation into Defendant's immigration status or some other criminal activity. To the contrary, the officers obtained the fingerprints through standard booking procedures. To hold that the fingerprints obtained as a result of an unlawful seizure are inadmissible forever because they are fruits of the poisonous tree would allow criminal immunity in perpetuity. Consequently, the Court finds that despite the absence of probable cause to support Defendant's arrest, the fingerprints obtained following that arrest, which were taken pursuant to routine booking procedures, are admissible in this action. As such, Defendant's Motion to Suppress on this point is denied.

    2.    <u>Arrests on December 30, 2005, and January 3, 2006</u>

Defendant contends that his arrests on December 30, 2005, and January 3, 2006, were unconstitutional seizures either because the Task Force officer lacked probable cause or because any evidence supporting probable cause was tainted by the unconstitutional seizure on December 8, 2005.

Independent probable cause existed to arrest Defendant on December 30, 2005, and January 6, 2005, for driving without a driver's license. On December 30, the Task Force officer was involved in surveying a home in the Avon trailer park. He had received information that individuals in the home were involved in illegal activities. The officer observed a vehicle leaving the home and followed the vehicle to a gas station, where he approached Defendant, the driver. During the consensual encounter, Defendant admitted that he did not have a driver's license.

Moreover, application of the Simpson factors dictates a finding that neither the arrests nor any evidence that was derived therefrom were fruits of the unlawful arrest on December 8, 2005. First, the temporal proximity between the unlawful arrest and the later arrests is attenuated. The "mere fact that the information gained during an illegal arrest gives rise to a subsequent separate investigation of an individual does not necessarily taint the later investigation." United States v. Watson, 950 F.2d 505, 507 (8th Cir. 1991). Second, intervening circumstances were present, including Defendant's release from custody several weeks prior to the encounters, receipt of a tip that individuals in the home from which Defendant departed were engaged in unlawful activity, observation that Defendant was potentially driving a vehicle without a driver's license, and Defendant's admission that he did

9

not have a valid driver's license. See Wong, 371 U.S. at 491 (a statement given several days after the defendant had been released from custody was untainted by prior unlawful arrest); Watson, 950 F.2d at 508 ("where a law enforcement officer merely recommends investigation of a particular individual based on suspicions arising serendipitously from an illegal search, the causal connection is sufficiently attenuated so as to purge the later investigation of any taint from the original illegality"). Finally, there is no evidence to indicate that the Task Force officer acted purposefully or flagrantly to violate Defendant's rights. Subjecting Defendant to an unlawful arrest does not require law enforcement to turn a blind eye to his subsequent criminal conduct. As the Chief Magistrate Judge aptly explained:

> [T]he purpose of the exclusionary rule is to deter police misconduct, while preserving judicial integrity, and such a purpose is not advanced by prohibiting an officer from investigating subsequent criminal activity by an offender, even where the officer's investigation is based, in part, on knowledge that was acquired during a prior illegal arrest. . . . Defendant's interpretation of the exclusionary rule would be tantamount to affording immunity to an individual who was once unlawfully arrested, for subsequent criminal acts — a result which is clearly not contemplated by Fourth Amendment jurisprudence.

(R&R at 35.) Accordingly, the Motion to Suppress on this point is denied.

### 3. Statement on January 5, 2006

Defendant seeks to suppress statements that were obtained during an interview with the ICE agent on January 5, 2006. The interview occurred while Defendant was in lawful custody pursuant to a detainer issued by ICE. Moreover, the events leading to the detainer — the conversation between the Task Force agent and the ICE agent — occurred while Defendant was in lawful custody pursuant to his January 3, 2006, arrest. Finally, the record shows that

Defendant knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights. Accordingly, Defendant's Motion to Suppress the statements made on January 5, 2006, is denied.

**CONCLUSION**

Officers lacked probable cause to arrest Defendant on December 8, 2005. However, because the officers obtained Defendant's fingerprints as part of standard booking procedures, that evidence was not tainted by the unlawful arrest and is therefore admissible. Unlike the constitutionally defective arrest on December 8, 2005, the arrests on December 30, 2005, and January 6, 2006, were supported by probable cause and were not otherwise tainted by the unlawful arrest. Similarly, the statements obtained on January 6, 2006, were made pursuant to a valid <u>Miranda</u> waiver and are therefore admissible. Finally, the allegation of a prior conviction for an aggravated felony is not an element of the offense under 8 U.S.C. § 1326. Rather, § 1326(b)(2) is a sentencing enhancement. As such, the Motion to Dismiss portions of the Indictment that refer to § 1326(b)(2) is premature because it asks that the Court dispose of a sentence enhancing provision prior to a finding of guilt. Accordingly, **IT IS HEREBY ORDERED that**:

1. The Court **ADOPTS** the R&R (Docket No. 32);

2. Defendant's Motion to Suppress (Docket Nos. 11 and 18) is **GRANTED in part and DENIED in part** as directed in the R&R;

3. Defendant's Motion to Dismiss (Docket No. 21) is **DENIED without prejudice**; and

4. Defendant's Motion to Strike Surplusage in Indictment (Docket No. 25) is

**GRANTED** as directed in the R&R.

Dated: June 15, 2006

                                                  s/ Paul A. Magnuson
                                                  Paul A. Magnuson
                                                  United States District Court Judge